IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

SHELLY VARNER and
PAMELA ELLIOTT,

        Plaintiff,        Case No.

v.

                                JURY DEMAND

GENERAL MOTORS, LLC,

        Defendant.
_____/

## COMPLAINT

Plaintiffs Shelly Varner and Pamela Elliott both worked at Defendant's facility in Spring Hill, Tennessee and applied for the open stationary engineer position. Although they met the requirements for the job, and had higher seniority, they were not selected for the position. Two male employees with less seniority were selected. Accordingly, Ms. Varner and Ms. Elliott file this Complaint for sex discrimination, based on both disparate treatment and disparate impact theories, under Title VII and the Tennessee Human Rights Act.

## PARTIES

1. Plaintiff, Shelly Varner, ("Ms. Varner") is a citizen and resident of Maury County, Tennessee, and a current employee of Defendant. At all relevant times, Ms. Varner worked at Defendant's Spring Hill, Maury County, Tennessee location.

2. Plaintiff, Pamela Elliott, ("Ms. Elliott") is a citizen and resident of Marshall County, Tennessee, and a current employee of Defendant. At all relevant times, Ms. Elliott worked at Defendant's Spring Hill, Maury County, Tennessee location.

3. Defendant General Motors LLC ("GM") is a Delaware licensed liability company

1

licensed to transact business in Tennessee. Its registered agent for service of process is Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203-1312. At all material times, Defendant has been an employer as defined by Title VII and under state law.

## JURISDICTION AND VENUE

4. This is an action for unlawful employment practices brought Title VII of the Civil Rights Act of 1964 (Count I) and the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et seq*. (Count II).

5. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

6. Plaintiffs complied with all conditions precedent to the filing of their claims, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiffs a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue.

## FACTS

7. Ms. Varner was employed by GM since November 7, 1994. In 2018, she was a Journeyman Tool & Die maker.

8. Ms. Elliott was employed by GM since May 4, 1979. In 2018, she was a Journeyman Tool & Die maker.

9. The General Motors plant has a collective bargaining agreement, ("CBA"), in force at all relevant times between GM's Spring Hill Site and the UAW Local 1853. This agreement states in relevant part:

> Section I 1(a)
> Where ability, merit and capacity, as determined by the parties, are equal, the team member

with the longest length of service capable of performing the job will be transferred.
   a. Team members will be transferred under these provisions and will not have the option to refuse such a transfer.
   b. Transfer to KSA Areas under Paragraph 63(a) or 63(b) shall be filled by the highest seniority team member who meets the minimum qualifications, as determined by the parties.

10. On September 11, 2018, a job posting, KSA-18-21, was posted for a Journeyman-in-Training Stationary Engineer. GM was seeking two individuals for the position.

11. The stationary engineer position is a highly sought-after position because the stationary engineers work in the powerhouse/central utilities complex ("CUC") which remains open and working 24 hours a day, 7 days a week. Thus, the opportunities for overtime are far more vast that working as a Tool & Die Maker.

12. In addition, if selected for the journeyman-in-training position, the employees would receive training for the stationary engineer position, eventually obtain a Journeyman Stationary Engineer card, and have more opportunities for advancement in their careers.

13. GM has sufficient tool & die makers, so an opportunity to move out of tool & die and learn an additional trade is of value.

14. During the posting period of the job, both Ms. Varner and Ms. Elliott applied for the position, of which there were two open slots.

15. After the posting period elapsed, GM reposted the opening allowing only Journeymen Mechanics to apply. There were no Journeymen Mechanics who applied. Thus, they reverted back to the initial pool of applicants to interview, including Ms. Varner and Ms. Elliott.

16. Mr. Noel's application was time-stamped after the job posting period and should not have been considered, however, he was allowed to interview regardless.

17. GM posted the position as a "KSA" position, meaning that it would be selected based on "knowledge," "skills," and "abilities." According to the contract, the position was to be

awarded to the employee with the highest seniority who meets the minimum qualifications.

18. Ms. Varner and Ms. Elliott were selected to interview for the position.

19. Mr. James Hargrove, a male, and Mr. Matt Noel, a male, were also selected to interview for the position.

20. All of the applicants were tool & die makers and had same knowledge, skills, and training.

21. Ms. Varner and Ms. Elliott had more seniority than Mr. Hargrove and Mr. Noel.

22. The applicants were interviewed and given a written score on seven categories. There was no written test administered.

23. The scoring was entirely subjective based on the two-member interview panel members' interpretation of the interviewee's answer.

24. Ms. Varner and Ms. Elliott were intentionally scored lower than the male candidates and were wrongly scored on several categories so that their scores were below the minimal qualifications.

25. For example, but not limited to, Ms. Elliott currently works in Global Manufacturing Support in which she coaches team leaders and team members throughout the plant on GM standards and teaches classes. This is an example of cross-training, however Ms. Elliott was marked a "6" by both interviewers for cross-training, out of a possible 9.

26. For example, but not limited to, Ms. Varner works overtime as a mechanic, which is an example of cross-training, however Ms. Varner was marked a "6" and a "3" in cross training by the interviewers, out of a possible 9.

27. For example, but not limited to, all four applicants have never worked in the CUC nor do they have stationary engineer experience, however, the male applicants, were marked

substantially higher on this criteria, with a "12" and a "16" when Ms. Varner and Ms. Elliott were marked the lowest, with a "4."

28. Mr. Howell and Mr. Noel received higher scores in that category even though neither had any stationary engineer or experience working in the CUC.

29. As a result, the scores of Ms. Varner and Ms. Elliott were much lower than the scores of the two males.

30. Had GM not discriminated against Ms. Varner and Ms. Elliott, their scores would have been much higher and the scores of the male applicants would have been much lower.

31. Although the job description listed some skills as "required" skills and some as "preferred" skills, these skills were given equal weight in the scoring by the interview panel, with a result of the men scoring higher on skills that were not required.

32. GM selected the two males for the position, although they had less experience, fewer of the required skills and qualifications, and less seniority than Ms. Varner and Ms. Elliott.

33. After they were non-selected for the position, both Ms. Varner and Ms. Elliott filed grievances against GM alleging violations of the CBA. Those grievances remain unresolved and are still pending.

34. Mr. Jonathan McPike, Manufacturing Engineering Director, told Ms. Elliott that she was not selected because, "They are a great bunch of guys over there and they get along so well."

35. After they filed grievances, GM had other openings for stationary engineers, however GM restricted the applicant pool so that Journeyman Tool & Die Makers could not apply; thus Ms. Varner and Ms. Elliott have been ineligible to apply for other stationary engineer positions.

36. On information and belief, in April 1, 2019, and more recently, GM allowed at least one additional male employee to transfer to the powerhouse team as a stationary engineer, who did not have any prior experience as a stationary engineer. Ms. Varner and Ms. Elliott were not allowed to apply for those positions, and they were not posted, in accordance with GM's collective bargaining agreement.

37. This is a continuing violation of Title VII and THRA because Ms. Varner and Ms. Elliott continue to be unable to apply to be promoted to the stationary engineer position, and continue to lose pay and benefits associated with that position they were wrongfully denied on the basis of their sex and in retaliation for their complaints.

**Count I**
**Violation of Title VII - Sex Discrimination/Retaliation**

38. Plaintiffs restate and incorporate herein the above paragraphs in their entirety.

39. Plaintiffs were subjected to disparate treatment in the terms and conditions of their employment the Defendant's workplace because of their sex, female.

40. Plaintiffs were subjected to disparate impact in the terms and conditions of their employment in the Defendant's workplace because of their sex, female.

41. Defendant utilized a standard for KSAs which had a disparate impact on female applicants for positions in the CUC.

42. Plaintiffs were qualified the position of stationary engineer, but two men with less qualifications were hired instead.

43. Plaintiffs suffered adverse employment actions as a result of discrimination on the basis of sex, including, but not limited to different terms and conditions, loss of pay and benefits, loss of earning opportunity, and loss of job security than similarly situated male employees.

6

44. Plaintiffs objected to the manner in which they had been treated when they complained to Defendant and filed grievances and a Charge of Discrimination with the Equal Employment Opportunity Commission objecting to discrimination.

45. Defendant retaliated against Plaintiffs by changing the job requirements so that Plaintiffs could not apply for the stationary engineer job.

46. Defendants violation of discrimination and retaliation is continuous and ongoing.

47. As a direct and proximate result of Defendant's unlawful acts, Plaintiffs suffered and continue to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

48. As a result, Plaintiffs are entitled to recover their damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which they may be entitled.

## Count II
## Violation of Tennessee Human Rights Act - Sex Discrimination/Retaliation

49. Plaintiffs restates and incorporates herein the above paragraphs in their entirety.

50. Plaintiffs were subjected to disparate treatment in the terms and conditions of their employment the Defendant's workplace because of their sex, female.

51. Plaintiffs were subjected to disparate impact in the terms and conditions of their employment in the Defendant's workplace because of their sex, female.

52. Defendant utilized a standard for KSAs which had a disparate impact on female applicants for positions in the CUC.

53. Plaintiffs were qualified the position of stationary engineer, but two men with less qualifications were hired instead.

54. Plaintiffs suffered adverse employment actions as a result of discrimination on the basis of sex, including, but not limited to different terms and conditions, loss of pay and benefits, loss of earning opportunity, and loss of job security than similarly situated male employees.

55. Plaintiffs objected to the manner in which they had been treated when they complained to Defendant and filed grievances and a Charge of Discrimination with the Equal Employment Opportunity Commission objecting to discrimination.

56. Defendant retaliated against Plaintiff's by changing the job requirements so that Plaintiffs could not apply for the stationary engineer job.

57. Defendants violation of discrimination and retaliation is continuous and ongoing.

58. As a direct and proximate result of Defendant's unlawful acts, Plaintiffs suffered and continue to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

59. As a result, Plaintiffs are entitled to recover their damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled

**RELIEF REQUESTED**

Plaintiffs respectfully request:

1. A jury trial;

2. Judgment in favor of Plaintiffs and against Defendant on all counts in this action;

3. Declaratory relief;

4. Back pay and damages for lost benefits;

5. Reinstatement or front pay;

6. Compensatory damages for embarrassment, humiliation, stress, anxiety,

inconvenience, and loss of enjoyment of life;

    7.     Punitive damages;

    8.     Attorneys' fees and expenses;

    9.     Prejudgment interest and, if applicable, post-judgment interest; and

    10.    Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

*s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*