UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| SHELLY VARNER, | ) |
|     Plaintiff, | ) Case No. 1:20-cv-0079 |
| | ) Judge Campbell |
| v. | ) Magistrate Judge Holmes |
| GENERAL MOTORS LLC, | ) |
|     Defendant. | ) |

**DEFENDANT GENERAL MOTORS LLC'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. Introduction[1]

Plaintiff' Shelly Varner's Response brief establishes that this matter is a quintessential example of a case in search of both a theory and evidence to support it. Plaintiff is a long-term skilled trade employee at GM who decided to apply for another skilled trade position using a process agreed to by Defendant and Plaintiff's Union. The only alleged meaningful distinction between her current job (which she still holds) and the position she sought is the *opportunity* for additional overtime (notably, the hourly wage for both positions is identical). Despite admittedly and repeatedly turning down overtime opportunities in her current job, Plaintiff contends she would have worked every available hour if she had received the other position. Presented with Defendant's Statement of Undisputed Facts, Plaintiff *admits* that many of the facts Defendant contends are material are undisputed, but then responds with a bevy of additional immaterial facts. In short, Plaintiff's Response has provided no reason for this Court to deny Defendant's Motion for Summary Judgment.

## II. Defendant's Motion Is Not a Motion for Partial Summary Judgment and Did Not "Waive" Addressing Plaintiff's Purported Disparate Impact Theory.

Defendant's Motion for Summary Judgment makes it clear that it seeks dismissal of the Complaint in its entirety based on the failure to state a claim as a matter of law. *See* D.E. 51. Thus, to the extent that Plaintiff actually pled a "disparate impact" theory (which Defendant disputes), Defendant's assertion that Plaintiff's claims should be dismissed for failure to state a claim as a matter of law is sufficient to include this theory.

Additionally, it is clear that the gravamen of the complaint is *intentional discrimination*. Plaintiff's Complaint allegations are unmistakable in this regard. *See* D.E. 1 at ¶¶ 23-24, 30. The

---

[1] Defendant notes that it filed an Unopposed Motion to exceed the five page Reply limit prior to submitting this Reply. *See* [Docket Entry No. 65].

only logical conclusion to be drawn from the Complaint is that Plaintiff believes that had she and the male candidates been scored properly, she would have been selected for the position. Plaintiff's objection is solely with *the way she was treated*, and not with the employment policy to which Plaintiff's Union agreed. Accordingly, Plaintiff's attempt to shoehorn her allegations of intentional discrimination into a "disparate impact" theory should be flatly rejected by this Court. *See Scheidecker v. Arvig Enters., Inc.*, 122 F.Supp.2d 1031, 1043-44 (D.Minn.2000) (a plaintiff "cannot recast a disparate treatment claim to establish a disparate impact claim").

Moreover, Plaintiff's Complaint does not allege facts in support of a disparate impact theory. For example, Plaintiff does not reference a remedy for any other allegedly impacted women, does not seek or reference relief related to a disparate impact claim (i.e., injunction, adoption of an alternative policy, etc.), does not assert the existence of a facially neutral policy with an unintentional impact or a significant disparity based on sex—nor did she assert such in her EEOC Charge.[2] Instead, Plaintiff's Complaint only asserts claims that "Plaintiffs were subjected to disparate impact" and there was a "disparate impact on applicants for positions in the CUC" failing to note, however, that the **only female applicants** referenced in the Complaint during the relevant time period were Plaintiff and former Plaintiff Elliot. Of course, a sample size of two does not establish a disparate impact given the undisputed fact that evidence of "statistical disparities must be 'sufficiently substantial that they raise … an inference of causation.'" *Shutt v. Sandoz Crop Protection Corp.*, 944 F.2d 1431, 1433 (9th Cir. 1991) (citing *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 992, 995 (1988)).[3] Notably, even if Plaintiff actually adequately pled a

---

[2] Plaintiff's EEOC Charge did not raise a disparate impact claim. "Courts have consistently required that discrimination charges 'identify or describe the neutral employment practice which is alleged to disproportionately affect protected employees' in order to exhaust disparate-impact claims." *Brown v. Ameriprise Fin. Servs., Inc.*, 707 F.Supp.2d 971, 976-77 (D. Minn. 2010) (citing multiple cases).

[3] Additionally, "[t]he statistical evidence may not be probative if the data are 'small or incomplete.'" *Shutt*, 944 F.2d at 1433 (citing *Watson*, 487 U.S. at 996–97). *See also Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 992, 999, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (merely pointing to "statistical disparities in the employer's workforce" is

2
Case 1:20-cv-00079   Document 66   Filed 08/24/22   Page 3 of 9 PageID #: 1296

disparate impact theory, Defendant's articulation of a legitimate nondiscriminatory reason for its decisions, lack of "materially adverse action" and pretext analysis would still apply and require dismissal of her claims. *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990). Likewise, Defendant's arguments regarding the lack of a "materially adverse action" and the lack of pretext also applies to Plaintiff's disparate impact theory to the extent the Court finds this theory has been adequately pled.

### III. Plaintiff's Response to Defendant's Motion Contains Multiple Fatal Flaws That Compel Granting of Defendant's Motion.

#### A. Plaintiff Cannot Satisfy the Fourth Prong of the *Prima Facie* Standard and Confuses it with the Legitimate Nondiscriminatory Reason Standard.

First, Plaintiff's Response makes it clear that she cannot demonstrate that she was qualified for the JIT Stationary Engineer Position. Faced with this reality, Plaintiff "doubles down" on her assertion that ascertaining one's knowledge, skills and abilities for a position (i.e., KSA) is somehow a discriminatory practice, and, more importantly, that because she has seniority over the selected candidates, she was more qualified. [D.E. 61 at pp. 7-8, 21-22]. In support of her argument, Plaintiff cites to two class action cases (*Rowe v. General Motors Corp.*, 457 F.2d 348, 356 (5th Cir.1972) and *Senter v. General Motors Corp.*, 532 F.2d 511, 526, 530 (6th Cir.1976)), both decided in the early days of Title VII regarding alleged employment practices of Defendant that negatively impacted promotion opportunities and positions for hundreds of black employees through restrictions on the application and selection process. Both cases, however, are clearly distinguishable based on the facts and allegations. Indeed, Plaintiff's testimony and primary contention has been that her "seniority" was more important than any other factor, including evaluation of merit. Plaintiff's position (adherence to a rigid seniority system that ignores merit),

---

not sufficient and requiring that plaintiff provide "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants … because of their membership in a protected group").

3

and not the KSA process, would actually be the precise type of promotional practice the courts in *Rowe* and *Senter* objected to—i.e., practices that do not evaluate merit at all.

Plaintiff further argues that even if the male applicants had more prior relevant experience at other jobs, that prior experience is wholly irrelevant because they all would have to be trained in the JIT position.[4] However, the law requires a demonstration of qualifications as part of the *prima facie* case, not just arguments about "on the job training," and Plaintiff clearly has not met this burden here. *See generally Artis v. Finishing Brands Holdings*, 639 Fed. Appx. 313, 316 (6th Cir. 2016); *Crane v. Mary Free Bed Rehab. Hosp.,* 634 F. App'x 518, 12 (6th Cir. 2015).

### B. Plaintiff Conflates the *Prima Facie* Case Qualification Standard With the Legitimate Nondiscriminatory Reason Standard.

Plaintiff also conflates the *prima facie* case qualification standard with the legitimate nondiscriminatory "better qualified" standard, and does not meaningfully respond to either argument. In sum, even if Plaintiff were able to establish a *prima facie* case, Defendant's articulation of a legitimate non-discriminatory reason for its actions (i.e., the two selected candidates were better qualified) must also be addressed by Plaintiff. Plaintiff makes no meaningful response to the legitimate nondiscriminatory reason argument, but instead simply asserts that Defendant has incorrectly articulated the standard. As this Court is aware, courts are specifically instructed not to second-guess a company's hiring decisions—"[s]o long as its reasons are not discriminatory, an employer is free to choose among qualified candidates." *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987) (internal citations omitted); (cited by *Brennan v. Tractor Supply Co.*, 237 F.App'x 9, 23 (6th Cir. 2007) ("It is not the role of the court to question a business's choice from among qualified candidates"). Furthermore, "a plaintiff's perception of his

---

[4] Plaintiff also asserts that limited experiences are provided at GM because T&D is a more limited trade. If true, these alleged limitations would also impact male employees who had worked for a similar time period at GM.

4

competence … is irrelevant …" and courts should "look to the employer's motivation, not the applicant's perceptions, or even an objective assessment, of what qualifications are required for a particular position." *Wrenn v. Gould*, 808 F.2d at 502. Here, Defendant made the decision to hire the most qualified candidates among the four applicants based on the thoroughly documented selection and interview process agreed to by Defendant and Plaintiff's Union—a decision that need not be second-guessed by this Court. The Plaintiff's subjective belief that she was the most qualified individual for the position is completely irrelevant and falls well short of satisfying her burden.

### C. Plaintiff Did Not Suffer a Materially Adverse Action.

As previously stated, the only alleged difference between the two positions is this matter is that Plaintiff's current position allegedly has *less overtime opportunities* than the JIT position. *See* D.E. 61 at p. 5. Plaintiff's Response correctly identifies that this case is about a lateral transfer, not a promotion. In "lateral transfer" cases, a plaintiff has to demonstrate a meaningful difference between the two positions. *Cronk v. Nationwide Mut. Ins. Co.*, 376 F. Supp. 2d 800, 806 (M.D. Tenn. 2005); *see also Moore v. City of Columbus*, 129 Fed.Appx. 978 (6th Cir.2005) (noting that more than "a plaintiff's subjective impression concerning the desirability of one position over another" is needed to show an adverse employment action). Plaintiff's reliance on the theoretical *possibility of overtime difference* and the testimony of one of the successful candidates regarding his "perceptions" about the position are not proof of a material difference. *See Freeman v. Potter*, 200 Fed. Appx. 439, 443 (6th Cir. 2006); *see also Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) (noting that for a denial of overtime to amount to an adverse employment action, there must also be a "material detriment as a result of being denied overtime, such as opportunities for career advancement"); *Aiello v. Stamford Hosp., No. 09 Civ. 1161(VLB),*

5

2011 WL 3439459, at *12 (D.Conn. Aug. 8, 2011) (holding plaintiff failed to show "that denial of overtime resulted in material harm to his professional growth or career advancement"). Accordingly, Plaintiff cannot meet this burden.

> D. **Plaintiff's Improper Reliance on Certain Alleged Comments to Establish Pretext**

Finally, Plaintiff tries to create issues of fact by referencing certain alleged comments and attaching a nefarious meaning to them. [D.E. 61 at p. 21]. Specifically, Plaintiff asserts that the use of the term "a great bunch of guys" is evidence of sexual bias, as well as a reference to Plaintiff as a "cheerleading mom" and descriptions that the male candidates "talked more" than Plaintiff during their interviews. These comments, even if made, are not evidence of pretext or discrimination. In discrimination cases, courts look to whether the comments were made by a decision maker or by an agent within the scope of his or her employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the alleged adverse action. *Cooley v. Carmike Cinemas,* Inc., 25 F.3d 1325, 1330 (6th Cir. 1994). Stray remarks not related to the decision-making process are not evidence of unlawful discrimination. *Hopkins v. Electronic Data Systems Corp.,* 196 F.3d 655, 661 (6th Cir.1999). All of Plaintiff's alleged comments are "stray remarks" or otherwise not probative of discrimination.

As previously noted by Defendant, Jonathan McPike was not a decision-maker and denies making the "great bunch of guys" comment. Even if he had said it, the generic use of the term "guys" is not evidence of discrimination or sex bias. Plaintiff has also failed to demonstrate that references to how much or how little a candidate talked were related to a gender bias. Finally, and perhaps most egregiously, Plaintiff's assertion that the "cheerleading mom" reference is "inexplicable" and a reference to some type of sexist description or stereotype is wholly

6

disingenuous. Indeed, Plaintiff described herself using this same term when asked about activities outside of work during her deposition: "No. Not---I mean, **I'm a cheer mom** sometimes because my daughter is a cheerleader. Does that count?" D.E. 54-1, PageID # 233, RA 1, *Varner Dep.* at p. 22 (emphasis added). The stenographer's recording of Plaintiff's description of herself is certainly not discriminatory, and neither would an interviewer's recording of the same description. It is certainly not evidence of pretext and certainly not sufficient to withstand summary judgment. *See Ross v. Duggan*, 402 F.3d 575, 588 (6th Cir. 2004) ("naked speculation, conjecture, hunches, hypothesizing, intuitions, innuendo, insupportable 'inferences,' empty theorizing, creative guesswork, and wishful thinking" are insufficient to withstand summary judgment).

## IV. Conclusion

For the foregoing reasons and those included in its Motion for Summary Judgement, Defendant requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims against it in their entirety with prejudice.

Respectfully submitted,

*/s/ Luther Wright, Jr.*
Luther Wright, Jr., TN BPR #017626
Benjamin P. Lemly, TN BPR #035225
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
SunTrust Plaza
401 Commerce Street, Suite 1200
Nashville, TN 37219-2446
Telephone: 615-687-2213
Facsimile: 615-254-1908
luther.wright@ogletree.com
benjamin.lemly@ogletree.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Heather Moore Collins (BPR 26099)
Ashley Shoemaker Walter (BPR 037651)
7000 Executive Center Drive
Building Two Suite 320
Brentwood, TN 37027
(615) 724-1996
heather@hmccivilrights.com
ashley@hmcivilrights.com

*Attorneys for Plaintiff*

*/s/ Luther Wright, Jr.*