IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| SHELLY VARNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:20-cv-00079 |
| | ) | |
| GENERAL MOTORS LLC, | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE HOLMES |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM**

Pending before the Court is Defendant General Motors, LLC's ("GM") motion for summary judgment. (Doc. No. 51). Plaintiff Shelly Varner ("Ms. Varner") filed a response in opposition (Doc. No. 61), and GM filed a reply (Doc. 66). For the reasons discussed below, GM's motion will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is a sex discrimination and retaliation case arising from Ms. Varner's employment for GM at its facility in Spring Hill, Tennessee. Ms. Varner worked for GM for 28 years, beginning her career as toolmaker apprentice and participating in a four-year apprentice program to earn her journeyperson tool & die card. (Doc. No. 62 ¶¶ 8-11). After earning her card, Ms. Varner worked on machinery, lathes, mills, grinders, received blueprints, created parts, worked in the powertrain portion of the plant, the stamping department and as a general assembly mechanic. (Doc. No. 67 ¶ 1). She also worked with 100,000lb machines, repaired dies, made engineering changes, and fixed building platforms and pneumatic guns and hoists to prepare for new cars arriving. (*Id.*).

GM's Spring Hill facility recognizes four categories of journeyperson skilled trades: (1) electrical; (2) mechanical; (3) tool & diemakers; and (4) stationary engineers. (Doc. No. 62 ¶ 10).

The number of skilled trade workers at GM's Spring Hill facility varies but is generally consistent with the following metrics: 170 journeyperson electricians, 115 journeyperson mechanics, 40 journeyperson tool & die makers, and 13 journeyperson stationary engineers. (Doc. No. 54-20 ¶ 7). There are no female stationary engineers at GM's Spring Hill facility, nor have there been for at least ten years, and the local union has received complaints that the stationary engineers work in a "good ole boys club." (Doc. No. 67 ¶ 5). There is also a statistical significance to the rate in which GM's Spring Hill plant employs a lower share of women in its skilled trades than other companies within the same industry in the area. (*Id*. at ¶ 21).

In September 2018, GM had openings for two stationary engineers at its Spring Hill facility. (Doc. No. 62 ¶ 13). Ms. Varner applied, but GM selected two male employees with less seniority for the positions, Matt Noel and James Hargrove. (*Id*. ¶¶ 19-20; Doc. No. 63-10 at PageID # 773; Doc. No. 63-12 at PageID # 793). After learning that GM had selected Mr. Noel and Mr. Hargrove for the stationary engineer positions, Ms. Varner informed her union that GM had discriminated against her during the interview and selection process. (Doc. No. 62 ¶ 40). Ms. Varner claims that GM subsequently retaliated against her by denying her any consideration for other stationary engineer positions at the Spring Hill facility. (*Id*. ¶ 59).

Ms. Varner filed this action against GM on December 11, 2020, bringing claims for sex discrimination, "based on both disparate treatment and disparate impact theories," and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq*. (Doc. No. 1). On June 1, 2022, GM moved for summary judgment "as to each of [Ms. Varner]'s claims." (Doc. No. 51).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

3

Case 1:20-cv-00079 Document 69 Filed 10/21/22 Page 3 of 16 PageID #: 1320

### III. ANALYSIS

As noted above, Ms. Varner brings claims against GM for discrimination and retaliation under Title VII and the THRA.[1] A plaintiff may rely on either direct or circumstantial evidence to establish these claims. *See Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021); *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Here, Ms. Varner relies on circumstantial evidence to support her claims. Accordingly, to determine whether summary judgment is appropriate, the court will "apply the three-part burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)[.]" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775–76 (6th Cir. 2016).

Under this familiar burden-shifting framework, "the plaintiff bears the initial burden of establishing a *prima facie* case." *Id*. at 776. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]." *Burdine*, 450 U.S. at 255. "An articulation not admitted into evidence will not suffice." *Id*. at n.9. If the defendant meets its burden of production, the plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision by persuading the court that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence. *See id*. at 256 (citing *McDonnell Douglas*, 411 U.S., at 804–805).

---

[1] "The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." *Austin v. Alexander*, 439 F. Supp. 3d 1019, 1024 n.2 (M.D. Tenn. 2020) (quoting *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008)).

4

As GM seeks summary judgment on all claims, the Court will address GM's arguments as to each of Ms. Varner's claims in accordance with the foregoing framework.

**A. Title VII and THRA Discrimination – Disparate Impact**

"A plaintiff establishes a *prima facie* case of disparate impact when '(1) plaintiff identifies a specific employment practice to be challenged; and (2) through relevant statistical analysis proves that the challenged practice has an adverse impact on a protected group.'" *E.E.O.C. v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013) (quoting *Johnson v. U.S. Dep't of Health and Human Servs.*, 30 F.3d 45, 48 (6th Cir. 1994)). Although GM moves for summary judgment as to each of Ms. Varner's claims, it makes no arguments as to the disparate impact claim. GM's only reference to disparate impact is in its reply. "It is the defendant's burden at the summary judgment stage to make an initial showing that the plaintiff lacks evidence for a claim." *Barrios v. Elmore*, 430 F. Supp. 3d 250, 263 (W.D. Ky. 2020) (citation omitted). "Only when the defendant has made such a [showing] does the burden then shift to the plaintiff." *Id*. Here, GM's failure to properly raise an argument in its summary judgment motion relieves Ms. Varner of the burden of coming forward with specific facts to support her disparate impact discrimination claim. *See id*. (citing *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 725-26 (6th Cir. 2000)). Accordingly, summary judgment will not be granted as to Ms. Varner's disparate impact discrimination claim.

**B. Title VII and THRA Discrimination – Disparate Treatment**

Title VII prohibits employers from discriminating against individuals on the basis of sex. 42 U.S.C. § 2000e–2(a)(1). "To discriminate under Title VII means to treat similarly situated individuals differently." *Threat v. City of Cleveland, Ohio*, 6 F.4th 672, 677 (6th Cir. 2021) (citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682–83 (1983)). As noted above, GM, as the party bringing the summary judgment motion, has the initial burden of

5

informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). GM may satisfy its burden by presenting affirmative evidence that negates an element of the Ms. Varner's discrimination claim or by demonstrating an absence of evidence to support the Ms. Varner's case. *See id.* GM submits that the basis for its motion as to Ms. Varner's disparate treatment discrimination claims is that Ms. Varner cannot establish two of the essential elements of her *prima facie* case or pretext. GM attempts to satisfy its burden as the moving party by demonstrating an absence of evidence. The Court will address GM's arguments in turn.

1. *Prima facie* case of discrimination

To establish a *prima facie* case of discrimination under Title VII based on a failure to promote, Ms. Varner must show: (1) she is a member of a protected class; (2) she applied and was qualified for the promotion; (3) she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006); *see also White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. "Notably, 'a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.'" *Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008) (quoting *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir.2003)). In its motion for summary judgment, GM attempts to show an absence of evidence as to the second and fourth elements of the *prima facie* case.

6

*i. Qualified for the position*

GM correctly notes that the second element of the indirect-evidence *prima facie* case is determined by "a plaintiff's objective qualifications" for the relevant job. (*See* Doc. No. 52 at 12 (citing *Wexler*, 317 F.3d at 575). Objective criteria that courts may consider in determining whether a plaintiff can satisfy the qualification prong of their *prima facie* case include the employee's "education, experience in the relevant industry, and demonstrated possession of the required general skills." *George v. Youngstown State Univ.*, 966 F.3d 446, 464-65 (6th Cir. 2018) (quoting *Wexler*, 317 F.3d at 576). Here, GM cites to the following excerpts from Ms. Varner's deposition testimony to show the absence of evidence for this element, (*see* Doc. No. 52 at 13-14 (citing Doc. No. 53 ¶¶ 37, 55 (citing Doc. No. 54-1 at 85:9-22; 90:10-12; 97:15-25; 116:6-8))):

> Q. So once -- once you join GM in a skilled trade, for example, toolmaker, based on the -- both the local and the national agreement, you're limited somewhat in areas that you can work on to just that toolmaker or -- or stamping position. Is that -- is that your understanding?
>
> A. That is true. Only during times when there's kind of special circumstances like the 179 agreement that we talked about where I got to go to GA and work as a mechanic or, you know, training purposes, you overlap with other trades. But for the most part, your day-to-day work is tool and die work or electrical or whatever your trade is or CUC. You do not cross.
>
> ***
>
> Q. So what evidence do you have that they were, in fact, less qualified –
>
> A. They had less seniority.
>
> ***
>
> Q. What other examples of discrimination -- we'll start with just Al Farley. How else has Al Farley discriminated against you because of your sex?
>
> A. Well, I mean, specifically -- that's a hard one to answer. I mean, I don't know except I know that someone with 20 years' experience, 20-plus years' experience doing their job,

7

> I don't see how it couldn't have been more equally qualified. It should have come down to seniority right from the start.
>
> ***
>
> A. …appeal. And I explained to them that that felt very discriminatory because the guys had less seniority and got the job.

Ms. Varner's foregoing testimony does not show an absence of evidence as to her objective qualifications for the stationary engineer position. Accordingly, the Court finds that GM has failed to meet its initial burden, as the movant for summary judgment, of showing an absence of evidence as to the second element of Ms. Varner's indirect-evidence *prima facie* discrimination case. As such, the Court does not reach Ms. Varner's response regarding this element. *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 726 (6th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion.") (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000)).

> ii. *Qualifications of employees selected for the positions*

The fourth element of the indirect-evidence *prima facie* case requires Ms. Varner to establish that she possessed "similar qualifications" to the employee who was selected for the position. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011) ("[Plaintiff] is not required to establish that she and [the employee who received the promotion/position] had the exact same qualifications."). GM cites to the following excerpts from Ms. Varner's deposition testimony to show the absence of evidence for this element, (*see* Doc. No. 52 at 15 (citing Doc. No. 53 ¶ 39 (citing Doc. No. 54-1 at 65:20-66:5, 73:12-22, 84:25-85:8, 85:23-86:18, 90:24-91:3)):

> Q. Okay. Paragraph 18 of your complaint states that you and Ms. Elliott were interviewed -- were selected to interview for the position, and there were two positions; is that right?
>
> A. That is correct.

8

Q. Is it your understanding that the candidates for the two positions in question were you, Pam Elliott, James Hargrove and Matt Noel?

A. That's correct.

Q. Paragraph 20 of your complaint alleges that, "All of the applicants were tool and die makers and had the same knowledge, skills and training." Did I read that correctly?

***

Q. So I understand that you -- you believe that you were scored lower. But do you have any facts or evidence that you would point to to show that they -- they scored you lower and the male candidates higher?

A. I guess I don't -- I guess I don't know. I mean, I feel like based on their interview questions -- I mean, I couldn't control what they wrote down, you know, or made notes of, but I don't feel like they notated the things I said like they did the men.

***

Q. Do you know whether or not they would have obtained experience in areas that might be relevant to the stationary engineer position in other positions they worked before they joined GM?

A. Within General Motors -- well, what they knew prior to GM, no, I guess I could not comment on that. When you work for General Motors, you do things specific to your trade because we – we have things like lines of demarcation and things.

***

Q. So would you agree that it's at least possible that the other candidates had experience with the categories in Category 3 from before their time at GM?

A. Yeah. I don't know what they did prior to General Motors.

Q. Going back to your complaint. In Paragraph 30, you state that had GM not discriminated against you and Ms. Elliott, your scores would have been much higher and the scores of the male applicants would have been much lower. Did I read that correctly?

A. Yes.

Q. What evidence do you have that your score would have been much higher?

9

> A. Evidence? I do not think the scoring was done -- it's completely subjective. It was -- there was no scoring based on any real knowledge test. And I feel like if it had been, my scores would have been better. It was totally subjective.
>
> ***
>
> Q. What skills do you believe you possess that the male applicants don't that would be relevant to the stationary engineer position?
>
> A. Specifically, I don't know that I could give you specifics on that. I mean –

The foregoing testimony does not show an absence of evidence that Ms. Varner possessed similar qualifications to Mr. Noel and Mr. Hargrove. Nor does it make it more or less likely that she possessed similar qualifications to them. The Court finds that GM has also failed to meet its initial burden, as the movant for summary judgment, as to the fourth element of Ms. Varner's indirect-evidence *prima facie* discrimination case. As such, the Court does not reach Ms. Varner's response regarding this element. *See Hunter*, 220 F.3d at 726.

2. <u>Legitimate, non-discriminatory reason</u>

Despite GM not showing the absence of an element in Ms. Varner's *prima facie* case, if it can "clearly set forth, through the introduction of admissible evidence," a legitimate, non-discriminatory reason for its employment decision, then the burden shifts back to Ms. Varner to show that this legitimate, nondiscriminatory reason was pretext. *Burdine*, 450 U.S. at 255.

Here, "GM's legitimate, nondiscriminatory reason for selecting the applicants it did is unequivocal: …. GM selected the most qualified applicants[.]" (Doc. No. 52 at 16 (citing Doc. No. 53 ¶¶ 34-36); *see also* Doc. No. 66 at 5 ("[GM]'s articulation of a legitimate non-discriminatory reason for its actions [is that] the two selected candidates were better qualified[.]")). As evidence

10

Case 1:20-cv-00079   Document 69   Filed 10/21/22   Page 10 of 16 PageID #: 1327

of its legitimate, non-discriminatory reason, GM produced a document, shown below, containing the interview scores of the applicants for the position:

| | Die Maker Interviews week of 10-22-18 | | | CANDIDATE NAME<br>Pam Elliott | | CANDIDATE NAME<br>Matt Noel | | CANDIDATE NAME<br>James Hargrove | | CANDIDATE NAME<br>Shelly Varner | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Weight | Question# | Max poss before weighting | Max Total | Interview score | Weighted | Interview score | Weighted | Interview score | Weighted | Interview score | Weighted |
| Cat. 1 - CUC Related Machine/Equipment | 3 | 1 | 3 | 9 | 2 | 6 | 3 | 9 | 3 | 9 | 2 | 6 |
| | 3 | 2 | 3 | 9 | 3 | 9 | 4 | 12 | 4 | 12 | 3 | 9 |
| | 3 | 3 | 3 | 9 | 1 | 3 | 3 | 9 | 3 | 9 | 2 | 6 |
| Cat. 2 - Mechanical | 5 | 1 | 5 | 25 | 4 | 20 | 5 | 25 | 4 | 20 | 5 | 25 |
| Cat. 3 - CUC/SE Experience | 4 | 1 | 7 | 28 | 1 | 4 | 4 | 16 | 3 | 12 | 1 | 4 |
| Cat. 4 - Cross Training | 3 | 1 | 3 | 9 | 2 | 6 | 2 | 6 | 2 | 6 | 2 | 6 |
| | 3 | 2 | 3 | 9 | 2 | 6 | 2 | 6 | 3 | 9 | 1 | 3 |
| Cat. 5 - General | 3 | 1 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 |
| DOE | 3 | 2 | 3 | 9 | 3 | 9 | 3 | 9 | 2 | 6 | 3 | 9 |
| Site Knowledge/Experience | 3 | 3 | 3 | 9 | 3 | 9 | 3 | 9 | 2 | 6 | 3 | 9 |
| CUC schedule | 3 | 4 | 3 | 9 | 3 | 9 | 3 | 9 | 3 | 9 | 3 | 9 |
| Safety | 3 | 5 | 3 | 9 | 1 | 3 | 1 | 3 | 1 | 3 | 1 | 3 |
| Related additional Skills | 3 | 6 | 3 | 9 | 2 | 6 | 3 | 9 | 2 | 6 | 2 | 6 |
| Cat. 6 - Computer Skills | 2 | 1 | 3 | 6 | 3 | 6 | 3 | 6 | 3 | 6 | 3 | 6 |
| Cat. 7 Written/Communication | 3 | 1 | 3 | 9 | 2 | 6 | 3 | 9 | 2 | 6 | 2 | 6 |
| | 3 | 2 | 3 | 9 | 2 | 6 | 3 | 9 | 2 | 6 | 1 | 3 |
| Cat. 8 | 0 | 0 | 0 | 0 | | | | | | | | |
| | | | | | Total | 111 | Total | 149 | Total | 128 | Total | 113 |
| Max possible | | | 170 | | Corp date | 5/4/1979 | Corp date | 1/31/2000 | Corp date | 12/19/2016 | Corp date | 11/7/1994 |
| Minimum score to advance 70% ---> | | | 119 | | | | | | | | | |

(Doc. No. 54-7). GM also cites to an excerpt from Ms. Varner's deposition testimony in which she confirms various numbers from the foregoing document. (Doc. No. 54-1, PageID # 265; *see, e.g., id.* ("And at the bottom of your -- of your interview calculations, it states that you scored a 113 out of 170; is that correct? That's what it says.")). The foregoing evidence does not "clearly set forth" the legitimate, nondiscriminatory reason articulated in GM's briefing for why it selected Mr. Noel and Mr. Hargrove over Ms. Varner for the stationary engineer positions, *i.e.*, that they were better qualified. *See Burdine*, 450 U.S. at 255 n.9 ("An articulation not admitted into evidence will not suffice."). The foregoing evidence does not even set forth who GM selected for the stationary engineer positions, let alone its reasons for doing so. To the extent GM considers interview scores to be the equivalent of qualifications, such is not reflected in the foregoing evidence. Because GM has failed to meet its burden at step two of the *McDonnell Douglas* framework, the Court does not reach pretext.

11

C. **Title VII and THRA Retaliation**

GM submits that the basis for its motion as to Ms. Varner's retaliation claims is threefold: (1) Ms. Varner failed to exhaust her administrative remedies for her Title VII retaliation claim, (2) Ms. Varner cannot establish two of the essential elements of her *prima facie* case, and (3) Ms. Varner cannot establish pretext. The Court will address GM's arguments in turn.

1. <u>Exhaustion of administrative remedies</u>

GM argues that Ms. Varner's Title VII retaliation claim should be dismissed for failure to exhaust administrative remedies because she did not include the retaliation claim in her EEOC charge. (Doc. No. 52 at 20). In her response, Ms. Varner argues she exhausted her administrative remedies because "retaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to defendants" and because she was *pro se* at the EEOC stage, the EEOC assisted her in filing a charge, and she alleged a continuing violation. (Doc. No. 61 at 26 (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999)). Ms. Varner also produces evidence that she provided information to the EEOC that another male had been transferred to the stationary engineer role while she had a grievance pending. (*See* Doc. No. 63-34). GM filed a reply but did not respond to Ms. Varner's foregoing arguments that she has exhausted her administrative remedies for her Title VII retaliation claim. (*See* Doc. No. 66).

"Th[e] administrative exhaustion requirement is satisfied if the plaintiff explicitly sets forth the claim in the EEOC charge, or if the claim ultimately pleaded 'can be reasonably expected to grow out of' the administrative charges." *Garant v. Norfolk S. Ry. Co.*, 453 F. Supp. 3d 1027, 1035 (E.D. Mich. 2020) (quoting *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)). "A claim reasonably can be expected to grow from an EEOC charge '[w]hen the EEOC investigation of one charge in fact reveals evidence of a different type of discrimination against

12

the plaintiff' or 'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim[.]'" *Id.* (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)); *see also Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) ("[W]hen facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim."). The Court agrees with Ms. Varner that her retaliation claim can reasonably be expected to grow out of her discrimination claim. Accordingly, her Title VII retaliation claim will not be dismissed for failure to exhaust administrative remedies.

2. *Prima facie* case of retaliation

To establish a *prima facie* case of retaliation Ms. Varner must show that: (1) she engaged in activity protected by Title VII; (2) the exercise of her protected rights was known to GM; (3) GM thereafter took an action that was materially adverse to her; and, (4) her protected activity was the but-for cause of the materially adverse action. *See Kenney v. Aspen Tech, Inc.*, 965 F.3d 443, 448 (6th Cir. 2020). GM attempts to satisfy its burden as the moving party by demonstrating an absence of evidence for the third and fourth elements of the *prima facie* case.

i. *Materially adverse action*

"With respect to the third element, to meet the requirement of demonstrating a materially adverse action, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 614 (6th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Here, GM argues summary judgment is appropriate because there is no evidence that GM took "an adverse employment action against [Ms. Varner]." (Doc. No. 52 at 21

13

(citing *Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 704 (6th Cir. 2012; *Freeman v. Potter*, 200 F. App'x 439, 443 (6th Cir. 2006); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

GM fails to meet its initial burden as the movant for summary judgment as to this element because an adverse employment action is not required to satisfy the third element of a *prima facie* retaliation claim. *Redlin*, 921 F.3d at 614. Rather, in 2006, the United States Supreme Court held that "[t]he scope of [Title VII's] antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N.*, 548 U.S. at 67; *see, e.g.*, *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021) (In the retaliation context, the term "adverse employment action" encompasses more than just actions that affect "the terms, conditions or status of employment."); *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569 (6th Cir. 2019) ("[T]he district court erred in relying on our pre-2006 precedent regarding materially adverse employment actions. …. the Supreme Court made clear in *Burlington Northern* that the requirements for a retaliation claim are in fact considerably less stringent."); *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) ("In articulating the third element of a prima facie case of retaliation, the district court erred and stated that Rogers needed to show that she suffered an adverse employment action"); *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008) ("In contrast to Title VII's discrimination provision, the 'adverse employment action' requirement in the retaliation context is not limited to an employer's actions that solely affect the terms, conditions or status of employment, or only those acts that occur at the workplace.") (citing *Burlington N.*, 548 U.S. at 62-66). As such, the Court does not reach Ms. Varner's response regarding this element. *See Hunter*, 220 F.3d at 726.

## ii. Causation

The fourth element of the indirect-evidence *prima facie* retaliation case requires Ms. Varner to establish that her protected activity was the "but-for cause" of the materially adverse action. *See Kenney*, 965 F.3d at 448. GM cites to the following excerpts from Ms. Varner's deposition testimony to show the absence of evidence for this element, (*see* Doc. No. 52 at 24 (citing Doc. No. 53 ¶ 59 (citing Doc. No. 54-1 at 119:1-12, 125:16-20))):

> Q. Okay. Going back to your complaint, Paragraph 35 states that after you filed a grievance, GM had other openings for stationary engineers but restricted the applicant pool to prevent you from applying; is that correct?
>
> A. Yes.
>
> Q. What evidence do you have that GM restricted the applicant pool after you filed your grievance?
>
> A. Because there's been more men hired out there as stationary engineers, and it was never put on our jobs board.
>
> \*\*\*
>
> Q. Sure. In your own words, how have you been retaliated against?
>
> A. Well, I've been repeatedly denied any sort of consideration for these other jobs that came available out there.

The foregoing testimony does not show an absence of evidence of causation or an absence of evidence that GM restricted the applicant pool. While GM claims it has non-retaliatory reasons for the subsequent stationary engineer openings not appearing on Ms. Varner's jobs board, (*see id.* ("There are, of course, multitudes of reasons for this that do not amount to retaliation.")), such reasons do not show an absence of evidence for this element of Ms. Varner's *prima facie* case. Accordingly, the Court finds that GM has also failed to meet its initial burden, as the movant for summary judgment, as to the fourth element of Ms. Varner's indirect-evidence *prima facie* retaliation case. *See Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 876 (M.D. Tenn. 2021)

("Defendant focuses its argument on whether there was a legitimate, non-discriminatory reason for terminating Plaintiff Brown, not on the antecedent question of whether there is an absence of evidence to support Plaintiff's prima facie case under *McDonnell Douglas*. …. Defendant makes no argument regarding the "similarly situated" element of the *prima facie* case—and does not point to evidence suggesting the absence of this element—and Defendant has therefore failed to shift the burden to Plaintiff Brown on the indirect evidence framework."). As such, the Court does not reach Ms. Varner's response regarding this element. *See Hunter*, 220 F.3d at 726.

3. <u>Legitimate, non-discriminatory reason</u>

If GM can "clearly set forth, through the introduction of admissible evidence," a legitimate, nondiscriminatory reason for its employment decision, then the burden shifts back to Ms. Varner to show pretext. *Burdine*, 450 U.S. at 255. GM fails to do so. (*See* Doc. No. 52 at 25-26). Instead, it cites testimony from five different employees, (*see id.* (citing Doc. Nos. 54-19, 54-21, 54-23, 54-11, 54-14, 54-18)), and "Doc 63." (*Id.* at 26) ("GM's Spring Hill facility did not even have the option of utilizing Doc. 63..."); *see also* Doc. No. 54-19 at PageID # 428 ("what I'm referencing, it falls under Doc. 63")).[2] The Court cannot discern what GM's legitimate, nondiscriminatory reason is from the foregoing evidence. As GM's submitted evidence does not "clearly set forth" a reason for its employment decisions at issue in the retaliation claims, the Court finds that GM has failed to meet its burden at step two of the *McDonnell Douglas* framework. Thus, the Court does not reach pretext.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[2] The Court has not been able to locate "Doc 63" within the twenty-four exhibits, totaling more than 270 pages, GM filed in support of its motion. (*See* Doc. No. 54). "The Court is not required to search the record to unearth the facts to support a movant's claim." *Bryant v. Floyd Cnty. Fiscal Ct.*, 510 F. Supp. 3d 467, 478 (E.D. Ky. 2020).